We will hear the first case on calendar. I see counsel here. Fezzan v. Sessions. Good morning. I may have pleased the court. My name is Wayne Sachs. I'm here pleased to represent the Khalid family, including their son, Mohamed Khalid, who are present in the courtroom today, along with Mohamed, his parents, and his brothers and sisters. Your Honors, I'm going to ask to reserve three minutes for rebuttal. Done. Your Honors, this is a family case, a family law case, and it's about family unity. And the agency's decision in this case cannot be defended. It has several defects, one of which is so central that despite the best efforts of my colleague here to linguistically save it, it can't be saved. And that is that the agency has ruled that the physical and legal custody of my client is killed by my client's temporary separation from the family. And moreover, the central defect is that to maintain physical custody, according to the agency, my client must actually reside with his citizen father. And that turns the statute inside out. It adds words to the statute which are not there, which change the meaning of the statute. It changes the – not only does it do violence to the text, but it does violence to the goal of the statute, which was a liberalizing, wide-berthed, automatic derivation. So if temporary absences are contemplated by the statute, where do we draw the line? Here it was about five weeks, I think. Where do you draw the line? Is it boarding schools, going off to college, a trip to Italy for a month, or the child goes out to California and gets a job, still is in the legal custody of the father, but decides, I want to go to California and see if I can get a job there and works as a bartender in some restaurant for six months? Is that still consistent with the statute? Judge, there's no line to be drawn because it's automatic derivation. The last thing that needed to happen under the terms of this statute was that Mr. Khalid, Sr. naturalized. All the other conditions were met. Why does the statute say legal and physical custody? Well, there's a few reasons. Congress, we have to recognize that Congress doesn't just throw words in without meaning something, or at least we take that as a proposition. Let me say this, Judge. Legal and physical custody are family law terms that have only ever been construed by the agency in the context of adoption, divorce, or illegitimacy. But when you have here the biological child of an intact family, his derivation is automatic upon the last event in this case, which was the naturalization of his father. If we just put this in a slightly different factual context, if Mr. Khalid, Sr. became a citizen and was bringing young Muhammad over from his home country of Pakistan and Muhammad entered as a lawful permanent resident, then the last condition would have been my client's entry as a lawful permanent resident because absent a family court order or some other order, such as if Mr. Khalid, Jr. had become a ward of the state, someone is in the legal and physical custody of their parent. And the term legal and physical custody, it only arises in the context— But physical custody must have some meaning. Physical. What about my hypothetical? The child goes out and has been in California for a year working. Right. Still in the custody of his father. His father is naturalized. That's correct. He's still a derivative citizenship. Well, that's right. He becomes a derivative citizen exactly upon the father's naturalization. And just—you've posited a naturalization. But why— Then why did Congress say he has to be in the legal and physical custody of his parent? Is the child in California, in Judge Droney's hypothetical, in the legal and physical custody of his parent? Well, let's say he was in college. He's certainly— We're not saying he's in college. He's out working at a bar. In Vermont, we would call that an emancipated minor. Under the law, Mr. Khalid, Sr. was still—he's still claiming Mr. Khalid, Jr. as a dependent. Yeah, the thing is you're arguing your case, which is perfectly understandable and appropriate. But we're looking at this—I think all of us are looking at this in terms of what legal principle applicable in all cases would matter. And so you get to questions like the ones that have been asked. And you could ask someone who, hypothetically, somebody is convicted as an adult and sentenced to prison for three years at age 16 or for four years at age 16. And they have been in prison for years and years. And then—and we have to consider that possibility, too? Your Honor, precisely. And that case is a different case because in that situation—and there's two cases cited in our papers. One in our opening brief. It's reprised again in our reply brief. And a response to what my colleague said in showing a case where someone essentially was certified as a juvenile defendant that was treated as an adult in California and sentenced as an adult to a period of time. That person became a ward of the state. That custody ended— Because the person was in prison. Not because he was in prison. Not because he was physically behind bars, but because there had been a legal determination that he became a ward of the state and his—the custodial rights of the— My hypothetical did not include this person becoming a ward of the state. That's what happens if you're treated as an adult, Your Honor. In fact, we— It varies from state to state. If you're certified as a—if you are a juvenile defendant and then you are treated as an adult and then sentenced as an adult, then arguably that's a court order that changes the parent-child relationship. So at the time of the father's naturalization, your client was in the custody of the federal government. He was an unadjudicated juvenile—alleged juvenile delinquent. In the custody of the Bureau of Prisons. He was detained by them. Was he in the custody of the Bureau of Prisons? No, he was in the custody of the Berks County Family Shelter where they keep alleged juvenile delinquents. All right. And he was alleged. So no different than if he had been charged with stealing a bicycle. Let me ask you this question, and I don't know the answer to it. It's hypothetical, so I will agree these are not the facts of this case, but it's going to help me at least try to wrestle with this more precisely. If your client had had a medical emergency while in the custody of the shelter, did the parents have to be contacted in order to give permission? Would the parents have had to have been contacted in order to give permission for major surgery? Or does the shelter, as you put it, does the shelter have that authority to say, medical emergency, he goes in, we're making that decision, doesn't matter what the parents want? I don't know the precise answer to that question. Would that, if we knew the answer to that question, would that help inform our decision? I don't believe so. I don't think it would answer your question. Certainly he wouldn't be in the parents' legal custody because if he were in the parents' legal custody, it seems to me, under the laws of most states, the parents would have had to agree to the medical procedure. Judge, let me posit a hypothetical that speaks right to that point. Let's say instead of being in this family shelter. Does it answer my question? It does. Let's say he was in a psychiatric hold, in a lockdown psychiatric facility, or let's say he was being treated, God forbid, for cancer, or was in the Mayo Clinic. Certainly the parents want, it's not, that's where the voluntary, involuntary line, which the government seeks to draw here, as to the person who's off on vacation, traveling, or off in California, or off in college. This was a forced separation, and in that situation, let's say the psychiatric hold, or if someone was kidnapped. The parent would not lose physical and legal custody, the right to it, even though the day-to-day decisions were being made by another entity. That's why to take, just as you said, Judge, if you extrapolate out the consequences of the agency's decision here, it would affect kids who were in the hospital. It would affect kids whose parents were in the military, because there's a military program for naturalization of parents who are away, who are not residing with their children, who are back here. It would affect... Isn't there some special provision for that? No, Your Honor. There's a provision for naturalization, but it doesn't, but if you follow the agency's decision, the agency's decision said that to maintain physical custody, you have to actually reside with. That turns family law on its head. How do we know if somebody is incarcerated, whether they're in the custody of the mother or the father? Your Honor, incarceration... Physical custody of the mother or the father. If the parents have an intact family, they're in the custody of both parents. If there hasn't been a family court order to the contrary, they're in the partial custody of both parents, and both parents have custody. So you need a family court order for the person to be in the custody, in this instance, say, of the father? To change the custody relationship between parent and child vis-a-vis what physical and legal custody means, you either need some type of marriage dissolution or a custody battle if someone is not married, or if someone becomes a ward of the state if they're an unfit parent. But this is an intact family in this case? This is an intact family with a biological child, and in this situation, the last condition of derivation occurred when Mr. Khalid Sr. naturalized. Irrespective of where Mr. Khalid Jr. was laying his head down, whether he was in the hospital, in a juvenile detention facility, as an unadjudicated delinquent. And I urge the court to, the Department of Justice has guidelines which very specifically delineate what it means to be detained as a juvenile, alleged juvenile delinquent, versus what it means to be committed as someone who's already been adjudicated as a delinquent. And I'm not arguing the second case, because that's a little bit murkier. But in Mr. Khalid's case, he was unadjudicated. It was merely the charge which kept him in this juvenile, in the Berks County shelter. So regardless of the fact that he was there, he legally is in no different position than if he was in the hospital, if he was homeless, if the whole family was homeless. If he was away at college, if he was on a gap year, if he was in drug treatment, legally there's no distinction. So with respect, sir, there's no line to be drawn if the custody relationship between parent and child hasn't changed. You've reserved three minutes for rebuttal. We'll hear you then, sir. Thank you. Good morning. Good morning. The podium comes up a little bit, Mr. Stone. It makes a noise, but it does go up. I think it's jammed. Maybe as far as it goes. I'm used to having a podium a little too low, Your Honor. Good morning, and may it please the Court. My name is Paul Stone. I represent the Respondent Attorney General of the United States. The issue decision is whether, for purposes of automatic naturalization, the petitioner was residing in his father's physical custody while he was detained in the custody of a juvenile facility on charges of providing material support for terrorism. The term physical custody- What difference would the charge make? I don't think the charge would make a difference, Your Honor. Go ahead. The term physical custody must be defined according to a federal standard. And here the Board looked to its own family law decisions, which was the context in which Congress passed the CCA. Can we just talk about the legislative history a little bit? Sure, Your Honor. The statute was changed in 2000, and the principal change was before that, both parents had to be naturalized for a derivative citizenship of the child. Do you agree with that? For a child in his position, that's correct. But the change was now, with the change in 2000, you need only one parent, as long as that parent has custody of that child, because they wanted to make sure, Congress did, that there was a true connection between the child who was going to become a citizen and the parent who was naturalized. Am I right so far? Yes, in part, Your Honor. That was under the prior version of the statute, but it maintains- No, I'm talking about the new version. It maintains with the new, but there's additional aspects. Well, but the language of legal and physical custody was added in 2000. That's correct. And it seems in reading that with the prior version, Congress's intent was to make sure that if we're going to give this extra benefit, which is only one parent needs to be naturalized to get derivative citizenship for the child, we want to make sure that child has a strong connection to that parent, not to the other parent who's not naturalized. Is that right? I don't think so, Your Honor, because what happened is previously, there were a number of different statutes affecting alien children in a number of different situations, including ones with divorced parents, ones with intact marriages. And what Congress did was there were two purposes for the statute. The first was to actually simplify the system by combining all the requirements into one statute that all alien children were required to fulfill to obtain automatic naturalization. And the second point was to make citizenship automatic for children of American citizens that were adopted from overseas. That's not the issue here. But the result of combining all of that into one statute is Congress began applying the requirement for legal custody to all children, including children of intact marriages, and added onto that the requirement that the child reside in the legal custody and in the physical custody of the U.S. citizen parent. So you're telling me then that you don't believe the legislative history would show that the reason those words were added were to ensure that the child who's going to get derivative citizenship has a true connection to the one parent who's naturalized. Do you see what I'm talking about? I mean, it's not a very difficult hypothetical. So you're giving this benefit of, okay, you only need one parent to be naturalized to get derivative citizenship for the child. But we want to make sure that in order to confer that benefit on the child, that he or she has a real connection to that parent, not to the parent that's not naturalized. Yes, Your Honor. I think you're right about that. But the important thing to note about this is it's a naturalization statute, so it has to be strictly construed. So Congress applied that requirement of legal and physical custody. That may be true. I'm just trying to figure out why they added that language, and nobody seems to be talking too much about it, and I haven't seen any legislative history about it. This is just my own inference I've drawn from reading the two statutes, the before and after the change, where it seems like it was tightening up that connection between the naturalizing parent and that child because they're trying to make sure that, look, we're going to give this benefit to these children, but we want to make sure that those children are close to the parent, maybe not physically, or, you know, we can talk about that, but have a close connection with the parent who just was naturalized. I think tightening up that connection is a good way to think about it because it is different than before, and I haven't been able to find anything in the legislative history specifically discussing physical custody either. The board, however, since 1950, has issued a number of published decisions where it's considered physical custody to mean that the child actually resides with the parent. Well, but vis-à-vis the other parent, though. Doesn't the physical custody insertion of that mean we want to make sure that also the parent who's naturalized has the physical custody of this kid, not the parent that's not naturalized, and it may be in another country? That seems to be the reason for it. Right, but I would quibble that slightly. It doesn't say has the physical custody of the kid. It means it actually says the child resides in the physical custody of the parent, and that's the most important distinction in this case because we haven't argued that the father was deprived of a legal right to physical custody at any point because the board decision didn't do that and didn't say the father was deprived of a legal right to physical custody. The question is a factual one. Rather than de jure, it's de facto. Did the juvenile actually—I'm sorry, I used the word actually to emphasize. Did the juvenile reside in the physical custody of that U.S. citizen parent? And so that's the distinction between whether the father had physical custody. Let me just say it might be different if you're just comparing the custody status, both legal and physical, of the two parents. In other words, that seems to be the purpose of it, not whether if the child goes away for a month from the father who he's definitely living with all the time. That's what the statute was aimed at. It was aimed at which of the two parents really has this connection to the child. In order to give that derivative citizenship to the child, we want to make sure that that child has a real direct connection with the parent who got naturalized. That seems to be the purpose. So why would it matter if he goes away for a month on a trip, on a school trip from that father? Well, the board didn't decide that case. The AAO has considered cases similar to that with the children going away to boarding school and found that in those cases they still can reside in their parents' physical custody. In some of those cases, the children came home to visit during break time. In others, the AAO didn't find that to be important. Do we owe any deference to this decision? To the board decision? Yes. It's unpublished and it's de novo review. Because it's unpublished, it doesn't receive Chevron deference. Therefore, we don't owe that deference. It does not, Your Honor. Well, wouldn't it make sense for us to remand this for a presidential opinion to be issued? Because there are a lot of moving parts here. It could, Your Honor, but this case can be seen in a very narrow way, which is that a child in the physical custody. It can be seen in a very narrow way, but if it's looked at in the narrow way that this is pretrial detention and that this person has not been incarcerated after conviction, I'm not sure which way it goes. Yes, every case is narrow because it turns on its own facts. But if we got a presidential determination from the BIA, we probably would owe deference to it if it was reasonable. Yes, Your Honor. And wouldn't that clarify a lot of things that, frankly, you are struggling to clarify? Well, the board certainly could give it the broad reach that opposing counsel wants this case to have, which is affecting children in all different situations. Yes. If so, then that's what the BIA would say. The board declined to do that instead and just rule on the facts here, which is that a child in the physical custody of a detention center can't reside in his father's physical custody. Yes, that's what the board decided to do. But then what comes to us is a decision to make a ruling as to what the statute requires as a matter of law. And that may not be as clear as all that. And if so, then why wouldn't we ask the BIA to make the ruling in the first place and put a stay on removal in the interval? Well, Your Honor, I don't think it's necessary because this court doesn't need to rule on the broad concepts that Petitioner urges. It can rule on the narrow ruling of the board's decision, which is that a child in the physical custody of a detention center doesn't reside in his father's physical custody. I'd also like to point out the AEO sees it the same way. That doesn't deserve deference or Chevron deference. That's correct because it's unpublished. Would it be helpful to have an opinion, I think, following up on what Judge Jacobs is asking, that gives us at least the agency's overall viewpoint on what this language means? It could, Your Honor, but it would be difficult for the board in this case because the very particular facts are he was detained in criminal custody. He wasn't attending boarding school. There aren't other examples of that here. Let me give you a hypothetical of the very day that dad is naturalized, son is off, the petitioner here is off, has been picked up for something and is being held, right? So dad's not going to miss the naturalization ceremony, and the son has actually been held overnight and continues to be held overnight for one more night after that while the cops are sorting it out and the system is sorting out whether he is. And he's not in his dad's physical custody, according to this, according to what the CIA did here. Under this decision, I believe that would be correct if it's in a similar kind of detention center. Correct, even if it's just for a couple of days, but it happens to be the very days that dad got naturalized. Yes, but that wouldn't affect, he would need to be held for the entire period his father is naturalized because so long as he resides with his father. What does that mean? Because so long as he resides at some point during that period. What period? I'm talking about the day. Well, there's a period between when the father is naturalized and the child turns 18, and the child just needs to reside with the father at some point during that period. This case came about because during that entire period he was detained in a 24-hour detention facility. Can I ask you about a different topic, which is that he was convicted of conspiracy, giving material support to terrorists, did very bad things, but the government filed a 5K motion in his trial and his sentence was reduced from 15 years to 5 years. And the government in its sentencing memo detailed all the cooperation that he gave against terrorism to earn that 5K letter from the government, met 20 times with government agents, he testified before two grand juries, played an instrumental role in three separate prosecutions. But at the end it says that there's still some chance that he would re-radicalize. Does the government have any information that he's re-radicalized, or has he stayed on the straight and narrow path helping the government out since he was sentenced in Pennsylvania? I don't have information on that, Your Honor. That would be something that the U.S. Attorney or the FBI would know about. But you haven't been told that there is. I haven't been told that there is. Did you ask? I haven't asked, because ultimately it's not an issue in this case. I'd like to point out one last thing, if I may. I understand my time is up. I would like to point out that this is an automatic citizenship statute, meaning the child needs do nothing to qualify except fulfill the requirements. People not in the petitioner's situation can still apply for citizenship. So even if a person goes to an involuntary mental institution involuntarily, when they get out, they can still apply to naturalize. Even if, for example, it were true that this is what the Board's decision means. The Board doesn't need to consider it that broadly, but that's how they're materially different. The petitioner's chances of getting citizenship on that basis are very limited. This petitioner cannot, and that's why this case is being so hard fought, because Congress has specifically stated that people convicted for material support for terrorism cannot adjust status to lawful imprisonment at residence, which is the first step needing to naturalize. Citizenship is all in all. Yeah. Okay, thank you. Thank you, Your Honor. Judge, let me speak to your point about what my client has done since he was convicted. You know, these crimes occurred when he was 15, 14 to 15 years old. He was undiagnosed with Asperger's. After he was placed into custody when he was 17, the court-ordered psychiatrist, ordered by Judge Patrice Tucker from the Eastern District of Pennsylvania, disclosed for the first time an extensive diagnosis of Asperger's. This is an isolated kid upstairs in his bedroom on the computer, and if he didn't go to the post office one time— But he was convicted. Sure he was. Since that time— My question is, what happened since that time? Since that time— Is there any evidence that he's re-radicalized? Not only is there no evidence of that, it's exactly the contrary. In fact, appended to the reply brief in the appendix is a letter from his defense counsel. There's a third defendant in this case who was just extradited, Mr. DeMarc, the so-called black hand, and my client is already on the prosecution witness list to testify against this DeMarc. It's an open case in the Eastern District of Pennsylvania. That's in the appendix letter written in our reply brief written by defense counsel. Not only has he actively continued to cooperate, but my client Mohammed has devoted his life right now to arguing against and fighting against extremism. He's a noted author. He's in the blogosphere. He's offered his services to the government as an expert, essentially, in how to attack online recruitment so that someone in his situation, an isolated kid in the suburb somewhere who maybe doesn't have any other social connections, would not be radicalized in the future. He's been offered a position to do the same thing. Can I just ask a follow-up to Judge Jacobs' question he asked the government, which is what's your view on sending this back to the BIA for precedential opinion? Well, my view is I'm not in favor of it only because, as Amiki pointed out in this case, if you take the BIA just at their words, this case has far-reaching consequences, not just to Mr. Khalid, but to the words of the case impinge on the parent-child relationships and parental rights. As Amiki pointed out, if followed, it could affect hundreds, if not thousands, of people who are in foster care, who are in juvenile detention. It could affect the parents who are incarcerated, LPR parents who are incarcerated, whose children are not incarcerated. So it can't be read, the statute can't be read to kill derivation rights to be defeated by a period of forced temporary separation. That's what the words of the BIA opinion do. What I hear you saying is that you would not want to remand unless you would otherwise lose. Well put, Your Honor. Well, yeah. Well put. Thank you. Thank you both. We will reserve decision.